IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

| | |
|---|---|
| STEPHEN KEEN<br>3427 Pocahontas Drive<br>Edgewater, MD 21037<br><br>    Plaintiff<br><br>v.<br><br>LOANCARE, LLC<br>3637 Sentara Way<br>Virginia Beach, VA 23452<br><br>Serve On:<br><br>    The Corporation Trust Incorporated<br>    2405 York Road, Suite 201<br>    Lutherville Timonium, MD 21093-2264<br><br>    Defendant | Case No.: C-02-CV-21-001467 |

## COMPLAINT

COMES NOW the Plaintiff, Stephen Keen, by and through the undersigned counsel, and brings this action against the Defendant, LoanCare, LLC, alleging as follows:

### I. JURISDICTION AND VENUE

1.    That this Honorable Court has jurisdiction over the subject matter and the parties pursuant to Md. Cts. & Jud. Proc. §6-102 and §6-103 and venue is proper pursuant to Md. Cts. & Jud. Proc. §6-201.

### II. PARTIES

2.    That the Plaintiff, Stephen Keen (hereinafter referred to as "Mr. Keen"), is an adult resident of Edgewater, Anne Arundel County, Maryland.

4.   That upon information and belief, the Defendant, LoanCare, LLC (hereinafter referred to as "LoanCare") is a limited liability company with a principal office in Virginia Beach, Virginia, that services Mr. Keen's mortgage with Lakeview Loan Servicing, LLC.

### III. FACTS

4.   That Mr. Keen incorporates each and every allegation set forth in paragraphs 1 through 3 above.

5.   That on or about February 21, 2017, Mr. Keen purchased real property located at 3427 Pocahontas Drive in Edgewater, Anne Arundel County, Maryland.

6.   That Mr. Keen purchased the property for Seven Hundred Fifteen Thousand Nine Hundred Ninety Dollars ($715,990.00).

7.   That the property was secured by a Deed of Trust, a thirty (30) year loan in the amount of $676,362.00. The lender at the time was Universal Mortgage & Finance, Inc.

8.   That the loan was guaranteed by the U.S. Department of Veterans' Affairs.

9.   That on or about May 2, 2018, the above-referenced Deed of Trust was assigned to Lakeview Loan Servicing, LLC.

10.  That on or about May 29, 2018, Mr. Keen and Lakeview entered into a Loan Modification Agreement.

11.  That the parties agreed on a new principal balance of $704,199.56 and a yearly rate of interest of five (5) percent with monthly payments of $3,780.00 from July 1, 2018 to June 1, 2048.

12.  That on or about June 28, 2018, payments from Mr. Keen in the amount of $8,264.03 were accepted by LoanCare and applied to escrow.

13. That thereafter, on or about August 8, 2018, Mr. Keen's wife was injured in a serious motor vehicle collision.

14 That the collision caused a significant loss in Mr. Keen's family income, causing him to be unable to afford the monthly mortgage payment. At the time, the family income was also being drained by a mortgage and expenses on a separate home owned by Mr. Keen's wife, which she was unable to sell.

15. That thereafter, Mr. Keen contacted LoanCare by phone on several occasions and was advised that the file was closed. Ultimately, on or about October 28, 2018, Mr. Keen submitted correspondence in writing to LoanCare.

16. That on or about December 6, 2018, Mr. Keen submitted a Uniform Borrower Assistance Form to LoanCare, which included his monthly income, expenses, a Request for Transcript of Tax Return (IRS form 4506T), Borrower's Expense Statement, earnings statements from Mr. Keen's employer and the Maryland State Retirement and Pension System, a letter from Mr. Keen to LoanCare explaining the circumstances under which he was applying for a loan modification, a copy of the police accident report for his wife's auto accident. The Form submitted by Mr. Keen showed that his monthly income was $14,750.00 and his monthly expenses were $10,350.00 including the mortgage payment for 3427 Pocahontas Drive.

17. That on or about December 7, 2018, LoanCare sent a letter to Mr. Keen acknowledging receipt of the application.

18. That on or about December 12, 2018, LoanCare sent another letter to Mr. Keen indicating the application was incomplete and that it needed "60 day bank statements showing retirement (show all pages)."

3

19. That Mr. Keen supplemented his application and on January 3, 2019, LoanCare issued a letter to Mr. Keen indicating that the acknowledging receipt of the completed application on December 28, 2018, and indicating that it would either deny or approve the application within thirty (30) days.

20. That LoanCare denied Mr. Keen's application on or about January 24, 2019 and its reasons were stated in letters dated January 24, 2019 and March 28, 2019 – deficit of surplus income to support payments – proof of unemployment required – mortgage was previously modified and became 60 or more days delinquent within 36 months of the modification effective date (24 months for FHA) – insufficient income to afford modified payment and pay required taxes insurance and other related property expenses.

21. That while LoanCare alleged that Mr. Keen did not meet the regulatory requirements set forth by the Department of Veterans' Affairs for loan modification without Department of Veterans' Affairs approval pursuant to 38 C.F.R. §36.4315(a), if the "servicer believes the option would be in the best interest of the Veteran, and the Government, the servicer must submit a request for pre-approval consideration in VALERI for VA review." See VA Servicer Handbook M26-4, Chapter 5, Loss Mitigation, Paragraph 5.06(b) (Loan Modification (38 C.F.R. 36.4315); see also 38 C.F.R. §36.4315(b).

22. That to this end, on numerous occasions LoanCare representatives informed Mr. Keen in conversations that LoanCare had reached out the Department of Veterans' Affairs for pre-approval, but had either not heard back from the Department of Veterans' Affairs or the Department of Veterans' Affairs had not approved the loan modification package.

23. That based on these representations, Mr. Keen continued to pursue loan modification in 2019, submitting numerous and duplicative applications and withheld payments

4

on the mortgage during the process to his detriment, causing late fees, interest, and additional principal to pile up on the loan.

24. That thereafter, Mr. Keen resubmitted the loss mitigation application on or about May 10, 2019 and included with it earnings statements from his employer and the Maryland State Retirement and Pension System, a residential lease agreement to show monthly income from the other property owned by Mr. Keen's wife, which she had been able to rent.

25. That on or about May 16, 2019, LoanCare responded in writing confirming receipt of the loss mitigation application and asking for several items including bank statements, an expense statement, a mortgage assistance application - a uniform borrower assistance form, and IRS form 4506T.

26. That on or about May 20, 2019, Mr. Keen submitted bank statements, an expense statement, and IRS Form 4506T.

27. That on or about July 4, 2019 or July 5, 2019, Mr. Keen submitted the mortgage assistance application with attached a borrower's expense statement, request for transcript of tax return (IRS Form 4506T), bank statements, and a statement from the Maryland State Retirement and Pension system.

23. That on or about July 10, 2019, LoanCare acknowledged receipt of the application and on August 6, 2019, LoanCare sent Mr. Keen a non-approval letter listing the same reasons that were stated in the March 28, 2019 letter referenced above.

24. That on or about August 15, 2019, Mr. Keen submitted a duplicate mortgage assistance application and attached a letter concerning his pension, an earnings statement from his employer, bank statements, as well as 2017 and 2018 tax returns.

25. That on or about September 24, 2019, Mr. Keen received an e-mail from LoanCare requesting his July 2019 and August 2019 bank statements.

26. That on or about October 15, 2019, Mr. Keen received an e-mail from LoanCare requesting a copy of a lease agreement associated with the separate property owned by Mr. Keen's wife.

27. That on or about October 30, 2019, Mr. Keen received a letter from LoanCare thanking him for submitting the above-referenced lease agreement as well as pay stubs, but requesting rental deposits for the property owned by Mr. Keen's wife.

28. That on or about October 31, 2019, LoanCare issued another denial letter to Mr. Keen alleging that he had failed to produce required documents.

29. That shortly thereafter, Mr. Keen resubmitted the application.

30. That on November 4, 2019, LoanCare issued a letter to Mr. Keen acknowledging receipt of the application.

31. That on November 15, 2019, another notice of incomplete application was issued by LoanCare.

32. That on November 21, 2019, LoanCare finally issued an acknowledgment letter indicating that Mr. Keen's application was complete.

33. That on or about December 5, 2019, LoanCare again denied Mr. Keen's application.

34. That on or about January 10, 2020, Mr. Keen resubmitted the application, again with supporting documentation.

35. That on or about January 15, 2020, Mr. Keen received e-mail correspondence from LoanCare indicating that it was submitting the application to the U.S. Department of Veterans' Affairs for approval.

36. That on or about January 22, 2020, a Standard Modification Trial Period Plan was issued by LoanCare.

37. That the substance of the January 10, 2020 application was substantially the same as the previous applications submitted by Mr. Keen.

38. That in January, 2020, prior to the submittal of the January 10, 2020 application, Mr. Keen and his wife, on a call with LoanCare, conferenced in a representative with the Department of Veterans' Affairs, and the representative from the Department of Veterans' Affairs indicated to both Mr. Keen and LoanCare that it had not received complete paperwork from LoanCare with regard to the applications for loan modification. The paperwork submitted by Mr. Keen in 2018 and 2019 to LoanCare to support his application had not been forwarded on to the Department of Veterans' Affairs.

39. That it was in the best interest of the Veteran (Mr. Keen) and the Government, which backed the mortgage, that the loan be modified in lieu of default and foreclosure.

40. That instead LoanCare advised Mr. Keen that he could not make payments towards the mortgage during the loan modification process, summarily denied Mr. Keen's numerous requests to modify the loan for a significant period of time while representatives from LoanCare falsely informed him that it had submitted his complete applications to the Department of Veterans' Affairs for review.

41. That as a direct and proximate cause of LoanCare's conduct, Mr. Keen has suffered economic damages including, but not limited to, incurring additional interest and

principal on the loan, late fees and damage to his credit, as well as non-economic damages, including, but not limited to, stress, anxiety, humiliation, indignity and mental anguish, which strained not only Mr. Keen, but also his relationship with his wife and family.

## IV. CLAIMS

### COUNT I
(Violation of the Maryland Consumer Protection Act)

42. That Mr. Keen incorporates each and every allegation set forth in paragraphs 1 through 41 above.

43. That Mr. Keen was a "consumer" pursuant to Md. Code Ann. Comm. Law, §13-101(c).

44. That LoanCare was a "person" pursuant to Md. Code Ann. Comm. Law, §13-101(h).

45. That the promissory note – Deed of Trust, the loan modification dated May 29, 2018, and Mr. Keen's subsequent loan modification applications were "consumer transactions" pursuant to Md. Code Ann. Comm. Law, §14-201(c) as they were "transaction[s] involving a person seeking or acquiring real...property...or credit for personal, family, or household purposes."

46. That LoanCare was a "collector" pursuant Md. Code Ann. Comm. Law, §14-201(b). It was the mortgage servicer and, therefore, was a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction."

47. That the Maryland Consumer Protection Act, Md. Code Ann. Comm. Law §13-301, defines "unfair or deceptive trade practices" in part as:

> (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;...

48. That a violation of the Maryland Consumer Protection Act pursuant to Md. Code Ann. Comm. Law §13-301, includes (14) Violation of a provision of: (i) This Title;....

49. That LoanCare committed unfair or deceptive trade practices under §13-301(1) when it advised Mr. Keen via telephone that he could not make payments towards the mortgage while the loss mitigation application process was pending, while at the same time it delayed and stalled Mr. Keen's loss mitigation application and submitted incomplete documentation to the Department of Veterans' Affairs, while late charges, fees, principal and interest were accruing on the loan, while at the same time it told Mr. Keen over the phone that the Department of Veterans Affairs had denied loss mitigation applications when in fact LoanCare had submitted incomplete documentation to the Department of Veterans' Affairs concerning Mr. Keen's loan.

50. That losing the house to foreclosure would have caused Mr. Keen to lose VA benefits, therefore he relied on LoanCare's representations throughout the loss mitigation process.

51. That LoanCare knew that the mortgage was guaranteed by the Department of Veterans' Affairs and knew that under the circumstances loan modification needed approval from the Department of Veterans' Affairs.

52. That ultimately, LoanCare approved the loan modification in 2020 with the same documentation it received from Mr. Keen in 2018 and 2019.

53. That the loss mitigation application process took well over one (1) year due to LoanCare's delay, lack of cooperation and the transmittal of incomplete documentation to the Department of Veterans' Affairs.

54. That during that time, LoanCare was assessing late charges, fees, principal and interest to the mortgage.

55. That as a result of the delay, $85,510.58, which included past late charges, interest, and fees, was added to the principal balance on the mortgage on or about July 13, 2020.

56. That the above referenced statements had the capacity, tendency, or effect of deceiving or misleading consumers as they could cause a consumer to rely on the statements and miss mortgage payments and incur charges and fees.

57. That Md. Code Ann. Comm. Law §13-408(a) provides that "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title."

58. That Md. Code Ann. Comm. Law §13-408(b) provides that "any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees."

59. That as a direct and proximate result of LoanCare's conduct, Mr. Keen suffered the damages described herein.

WHEREFORE, the Plaintiff, Stephen Keen, prays for a judgment against the Defendant, LoanCare, LLC, in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), reasonable counsel fees, interest plus the costs of this action.

<u>COUNT II</u>
(Violation of the Maryland Consumer Protection Act)

60. That That Mr. Keen incorporates each and every allegation set forth in paragraphs 1 through 59 above.

61. That "[i]n collecting or attempting to collect an alleged debt a collector may not...[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Comm. Law, §14-202(8).

62. That the assessment of late charges, fees, principal and interest on Mr. Keen's loan while at the same time LoanCare delayed and stalled Mr. Keen's loss mitigation application, submitted incomplete documentation to the Department of Veterans' Affairs, and told Mr. Keen that the Department of Veterans Affairs had not approved his loss mitigation applications when in fact LoanCare had submitted incomplete documentation to the Department of Veterans' Affairs concerning Mr. Keen's loan, amounts to the enforcement of a right with knowledge that the right does not exist pursuant to Md. Code Ann. Comm. Law, §14-202(8).

63. That pursuant to Md. Code Ann., Comm. Law, §14-203, "[a] collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury."

64. That as a direct and proximate result of LoanCare's conduct, Mr. Keen suffered the economic and non-economic damages described herein.

WHEREFORE, the Plaintiff, Stephen Keen, prays for a judgment against the Defendant, LoanCare, LLC, in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), reasonable counsel fees, interest plus the costs of this action.

COUNT III
(Negligence)

65. That Mr. Keen incorporates each and every allegation set forth in paragraphs 1 through 64 above.

66. That LoanCare serviced Mr. Keen's mortgage with Lakeview Loan Servicing, LLC.

67. That LoanCare owed Mr. Keen a duty to use reasonable care to Mr. Keen in regards to his applications for a loan modification.

68. That LoanCare's duty of care is spelled out in the Maryland regulations adopted pursuant to Md. Code Ann., Fin. Inst., §11-501, et al, on mortgage lenders including mortgage servicers. Section 09.03.06.20 of the regulations state as follows:

> A licensee has a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, *servicing*, purchase, or sale of any mortgage loan, including, but not limited to:...(3) [t]he duty when servicing mortgage loans to: (a) promptly provide borrowers with an accurate accounting of the debt owed when borrowers request an accounting; (b) [m]ake borrowers in default aware of loss mitigation options and services offered by the licensee; (c) provide trained personnel and telephone facilities sufficient to promptly answer and respond to borrower inquiries regarding their mortgage loans; and (d) [p]ursue loss mitigation when possible.

69. That further, the VA Servicer Handbook M26-4, Chapter 5, paragraph 5.06(b) and 38 C.F.R. §36.4315(b) spell out a way for loan servicers to address loan modification applications when modification is in the best interests of the Veteran and the Government.

70. That LoanCare breached its duty of care to Mr. Keen when its representatives advised Mr. Keen not to make payments towards the mortgage.

71. That LoanCare breached its duty of care to Mr. Keen when its representatives advised Mr. Keen that his complete applications were being submitted to the Department of Veterans' Affairs for review, when in fact they were not.

72. That LoanCare breached its duty of care to Mr. Keen when it summarily denied his applications for a loan modification for more than a year without submitting complete documentation to the Department of Veterans' Affairs for review.

73. That as a direct and proximate cause of LoanCare's conduct and breaches of duty, Mr. Keen sustained the injuries and damages described herein.

WHEREFORE, the Plaintiff, Stephen Keen, prays for a judgment against the Defendant, LoanCare, LLC, in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), interest plus the costs of this action.

COUNT IV
(Negligent Misrepresentation)

74. That Mr. Keen incorporates each and every allegation set forth in paragraphs 1 through 73 above.

75. That LoanCare owed the duties of care referenced above.

76. That LoanCare made false representations of material fact to Mr. Keen including, but not limited to, advising him not to make payments during the pendency of the loan modification process and telling him that the Department of Veterans' was not approving his applications when at the same time LoanCare was not transmitting complete paperwork to the Department of Veterans' Affairs.

77. That LoanCare knew of the falsity of the above-referenced statements, or made them with such reckless indifference to the truth.

78. That LoanCare intended that Mr. Keen would act or not act in reliance on the above-referenced misrepresentations.

79. That Mr. Keen justifiably relied to his detriment on LoanCare's misrepresentations by not making payments towards the mortgage and continuing to apply for loan modifications and not reaching out to the Department of Veterans' Affairs for assistance to try to expedite his applications.

80. That as a direct and proximate cause of LoanCare's conduct, Mr. Keen suffered the injuries and damages described herein.

WHEREFORE, the Plaintiff, Stephen Keen, prays for a judgment against the Defendant, LoanCare, LLC, in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), interest plus the costs of this action.

COUNT V
(Intentional Misrepresentation)

81. That Mr. Keen incorporates each and every allegation set forth in paragraphs 1 through 80 above.

82. That the above-referenced false and misleading statements were made for the purpose of delaying the loan modification process, thereby having Mr. Keen incur late fees, interest, and increased principal.

83. That the threat of foreclosure did not dissuade LoanCare because the loan was guaranteed by the Department of Veterans' Affairs.

84. That on the other hand, losing the home to foreclosure or filing bankruptcy would have caused Mr. Keen to lose VA benefits.

85. That Mr. Keen relied on the above-referenced misrepresentations from LoanCare and continued on with the loss mitigation process and ultimately entered into a loan modification agreement with Lakeview Loan Servicing, LLC, which put him on the hook for the additional interest, late fees, and principal.

WHEREFORE, the Plaintiff, Stephen Keen, prays for a judgment against the Defendant, LoanCare, LLC, in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of One Million Dollars ($1,000,000.00), interest plus the costs of this action.

## COUNT VI
### (Violation of RESPA)

86. That Mr. Keen incorporates each and every allegation set forth in paragraphs 1 through 85 above.

87. That 12 CFR §1024.40, part of Regulation X of RESPA, provides the following:

(b) Functions of servicer personnel. A servicer shall maintain policies and procedures reasonably designed to ensure that servicer personnel assigned to a delinquent borrower as described in paragraph (a) of this section perform the following functions:

(1) Provide the borrower with accurate information about:

(i) Loss mitigation options available to the borrower from the owner or assignee of the borrower's mortgage loan;

(ii) Actions the borrower must take to be evaluated for such loss mitigation options, including actions the borrower must take to submit a complete loss mitigation application, as defined in § 1024.41, and, if applicable, actions the borrower must take to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program offered by the servicer;

(iii) The status of any loss mitigation application that the borrower has submitted to the servicer;

88. That 12 CFR §1024.41(c) provides that:

(1) Complete loss mitigation application. Except as provided in paragraph (c)(4)(ii) of this section, if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:

(i) Evaluate the borrower for all loss mitigation options available to the borrower;....

89. That 12 CFR § 1024.38 provides the following:

(a) Reasonable policies and procedures. A servicer shall maintain policies and procedures that are reasonably designed to achieve the objectives set forth in paragraph (b) of this section.

(b) Objectives —

15

(1) Accessing and providing timely and accurate information. The policies and procedures required by paragraph (a) of this section shall be reasonably designed to ensure that the servicer can:

(i) Provide accurate and timely disclosures to a borrower as required by this subpart or other applicable law;

(ii) Investigate, respond to, and, as appropriate, make corrections in response to complaints asserted by a borrower;

(iii) Provide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan;

(iv) Provide owners or assignees of mortgage loans with accurate and current information and documents about all mortgage loans they own;....

(2) Properly evaluating loss mitigation applications. The policies and procedures required by paragraph (a) of this section shall be reasonably designed to ensure that the servicer can:

(i) Provide accurate information regarding loss mitigation options available to a borrower from the owner or assignee of the borrower's mortgage loan;

(ii) Identify with specificity all loss mitigation options for which borrowers may be eligible pursuant to any requirements established by an owner or assignee of the borrower's mortgage loan;

(iii) Provide prompt access to all documents and information submitted by a borrower in connection with a loss mitigation option to servicer personnel that are assigned to assist the borrower pursuant to § 1024.40;

(iv) Identify documents and information that a borrower is required to submit to complete a loss mitigation application and facilitate compliance with the notice required pursuant to § 1024.41(b)(2)(i)(B); and

(v) Properly evaluate a borrower who submits an application for a loss mitigation option for all loss mitigation options for which the borrower may be eligible pursuant to any requirements established by the owner or assignee of the borrower's mortgage loan and, where applicable, in accordance with the requirements of § 1024.41.

(vi) Promptly identify and obtain documents or information not in the borrower's control that the servicer requires to determine which loss mitigation options, if any, to offer the borrower in accordance with the requirements of § 1024.41(c)(4).

90. That with respect to the subject mortgage, the standards for evaluating Mr. Keen's loss mitigation applications were not set by LoanCare, LLC and Lakeview Loan Servicing, LLC, but rather the Department of Veterans' Affairs, which backed the loan.

91. That LoanCare, LLC did not follow the standards for evaluation set forth by the Department of Veterans' Affairs.

92. That 12 CFR §1024.41(a) states that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

93. That 12 U.S.C. 2605(f) provides that:

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
    (1) Individuals
    In the case of any action by an individual, an amount equal to the sum of –
    (A) any actual damages to the borrower as a result of the failure; and
    (B) any additional damages, as the court may allow, in the case of a pattern or practice noncompliance with the requirements of this section, in an amount not to exceed $1,000.

94. That LoanCare violated RESPA when it failed to provide the Department of Veterans' Affairs with complete documentation that had been submitted to LoanCare by Mr. Keen and then informed Mr. Keen that his applications were not being approved by the Department of Veterans' Affairs.

95. That the information provided to Mr. Keen by LoanCare was not accurate and LoanCare Mr. Keen's numerous applications were not properly evaluated for all loss mitigation options Mr. Keen was eligible for.

96. That Mr. Keen incurred actual damages described herein as a proximate result of LoanCare's conduct.

WHEREFORE, the Plaintiff, Stephen Keen, prays for a judgment against the Defendant, LoanCare, LLC, in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), interest plus the costs of this action.

## COUNT VII
### (Injunctive Relief)

97. That Mr. Keen incorporates each and every allegation set forth in paragraphs 1 through 96 above.

98. That the missed mortgage payments during the relevant time periods have been reported to credit reporting agencies, thereby damaging Mr. Keen's credit rating.

WHEREFORE, Mr. Keen respectfully requests that this Court enjoin and/or prohibit LoanCare, LLC from reporting missed payments on the mortgage during the relevant time period to credit reporting agencies.

Respectfully submitted,

Edward F. Simon
CPF No.: 1206200228
Edward F. Simon, LLC
P.O. Box 4284
Annapolis, MD 21403
(410) 562-0669
edsimon.law@gmail.com
Counsel for Mr. Keen

### JURY DEMAND

The Plaintiff, Stephen Keen, prays for a jury trial on the issues presented forth in this Complaint.

Edward F. Simon

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Complaint does not contain any restricted information.

_____
Edward F. Simon