IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DISTRICT

| | | |
|---|---|---|
| STEPHEN KEEN | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.: 1:22-cv-00149-RDB |
| v. | : | |
| | : | |
| LOANCARE, LLC | : | |
| | : | |
| Defendant. | : | |

**PRE-TRIAL ORDER**

a) *Brief statement of facts that Plaintiff proposes to prove in support of Plaintiff's claims, together with listing of separate legal theories relied upon in support of each claim.*

Mr. Keen attempted unsuccessfully to modify his mortgage in 2019. During that time, interest and fees accrued on the mortgage and Mr. Keen experienced a tremendous amount of anxiety, stress, mental anguish and inconvenience. He is a veteran and a father of 5 children who was previously injured in the line of duty as a Maryland State Trooper. In 2018, his family's prior home remained unsold, causing the family to cover 2 mortgages. Additionally, later in 2018 his wife was involved in a motor vehicle collision, causing her income to drop drastically. Mr. Keen submitted multiple loss mitigation applications to LoanCare accompanied each time by a tremendous amount of financial paperwork.

By the spring of 2019, Mr. Keen's wife was back at work and the Keens were able to rent their prior home to tenants. Mr. Keen submitted this information to LoanCare on multiple occasions. Each time an application was deemed completed, it was sent to the VA, which guaranteed the mortgage, for pre-approval. However, the VA repeatedly denied pre-approval and stated to LoanCare that his hardship was unclear and there was no indication his reason for default had been cured. LoanCare repeatedly required Mr. Keen to supplement his applications with supporting documents, yet it did not submit these same documents to the VA. During this time, Mr. Keen was prohibited from making partial payments towards the mortgage. Mr. Keen worked with LoanCare each time and relied on it to process his applications to his detriment.

Finally, after Mr. Keen's loss mitigation application was denied in December 2019 and he was informed by LoanCare he had no other options other than a short sale or a deed in lieu of foreclosure, he and his wife were able to reach the loan technician with the VA. They were informed by the loan technician that she was unaware of his hardship – unaware that he had been paying his wife's expenses and she had not received documentation he had provided to LoanCare indicating that the reason for default had resolved. Thereafter, in January 2020, LoanCare re-submitted his application with the same financials and documentation to the VA, which pre-

approved the loan modification.  Mr. Keen began making trial payments and during this time, complained to LoanCare of the additional interest and fees added to the loan.  LoanCare's response was that this was non-negotiable.  With a foreclosure on the home still pending, Mr. Keen signed a loan modification agreement with Lakeview Loan Servicing, LLC, the holder of the note, in June 2020, which added interest and fees to the principal balance of the mortgage.

      Mr. Keen has asserted a claim under the Maryland Consumer Protection Act ("MCPA") found at Md. Code, Commercial Law, §13-101, et al.  Relevant provisions include §13-101(k), which provides that "[u]nfair, abusive, or deceptive trade practice" has the meaning stated in Subtitle 3 of this title."  §13-301(1) defines unfair and deceptive trade practice as "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers…" "[W]hether a statement is 'misleading' is judged from the point of view of a reasonable, but unsophisticated consumer." *Allen v. Bank of America, N.A*., 933 F.Supp.2d 716, 730 (D.2013). §13-301(3) defines unfair and deceptive trade practice as "[f]ailure to state a material fact if the failure deceives or tends to deceive…."  §13-303 states that "[a] person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in: (1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services;…(4) The extension of consumer credit; (5)  The collection of consumer debts.  "To violate the MCPA, a defendant need not intend to deceive the consumer." *Allen v. Bank of America, N.A*., 933 F.Supp.2d 716, 730 (D. 2013).  §13-408 indicates that "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title [and] (b) [a]ny person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees."

### b)  Brief statement of facts that the Defendant proposes to prove or rely upon as a defense thereto, together with a listing of the separate legal theories relied upon in support of each affirmative defense.

      A mortgage is loan that a borrower obtains for a residential property and promises to repay it.  Plaintiff's military service entitled him to a loan through the U.S. Department of Veterans Affairs ("VA") that is guaranteed by the government.  The VA controls the terms, requirements, and servicing of its loans.  In April 2017, Mr. Keen borrowed over $675,000 to purchase the subject property.  The property located about 30 minutes south of Annapolis and has a current estimated value in excess of $1,000,000.

      As servicer of Plaintiff's loan, LoanCare serviced the loan in accordance with VA guidelines and the applicable regulations.  Less than a year after obtaining the loan, Plaintiff defaulted on his loan obligations.  As servicer, LoanCare conducted loss mitigation in an effort to assist Plaintiff in avoiding foreclosure.  In May 2018, LoanCare assisted Plaintiff in obtaining VA approval for a loan modification that enabled him to avoid foreclosure.  Unfortunately, Plaintiff immediately defaulted on that loan modification, without having made a single payment.  As a result, under VA guidelines, Plaintiff was disqualified from receiving another loan modification (less than 12 months of payments, 36.431(a)(4); modified within the last 3 years, 36.4315(7)) unless the VA granted an exception.

From December 2018 through December 2019, LoanCare worked diligently with Plaintiff to process Plaintiff's multiple additional loan modification applications in an effort to obtain VA approval and avoid foreclosure. Plaintiff explained that the reason for his inability to afford the loan payments was that his wife was in a car accident resulting in her inability to work, resulting in a loss of income and their inability to sell or rent their second home. LoanCare processed each of Plaintiff's loan modifications in accordance with VA guidelines. The VA requires a complete application with supporting documents, which LoanCare reviews and prepares for submission to the VA. On multiple occasions LoanCare recommended that that VA grant an exception to its requirements and approve Plaintiff for a second loan modification to avoid foreclosure, including contacting the VA by phone and email. More specifically, for each of the 3 complete loan modification applications Plaintiff submitted (5 total, 2 were incomplete), LoanCare requested that the VA approve a second modification but the VA denied the request.

In December 2019, Plaintiff and his wife contacted the VA direct by phone to complain about its denial of a loan modification. The VA responded that it needed additional information to reconsider Plaintiff and LoanCare contacted the VA by phone for clarification. Plaintiff advised LoanCare that he did not want to include his wife's income and that he did not circle the second home rental payments on his bank records. In response, LoanCare contacted VA direct prior to resubmission of Plaintiff's modification application to help facilitate VA's approval. Although Plaintiff did not provide proof of rental income from the second home as the VA instructed or proof of his wife's income as the VA requested, the VA then approved Plaintiff for a second modification upon completion of a Trial Payment Plan ("TPP"). Under the TPP, the VA required Plaintiff to pay each of the 3 TPP payments in full before his loan could be permanently modified again and LoanCare informed Plaintiff of that requirement. Plaintiff completed the TPP and in June 2021 the parties executed a second modification that brought the mortgage current and reduced the interest rate from 5% to 3.625%.

Unfortunately, shortly after Mr. Keen returned the signed loan modification and LoanCare, Mr. Keen fell behind on his mortgage payments again. Plaintiff's August and September payments were made late, and his payment for October bounced due to insufficient funds. In March 2021, Mr. Keen's account was past due 90 days (due for January 2021) and LoanCare again reached out to Mr. Keen offering assistance. Keen issued a late payment in March that LoanCare agreed to accept, even though it had previously asked him for two payments. This late March payment brought his account current through February 2021.

At that time, there was a government assistance program related to the COVID pandemic that enabled LoanCare was able to offer Plaintiff a forbearance, which allowed him to stay in the property for up to a year without making his mortgage payments. Plaintiff elected the forbearance to continue for the maximum one-year forbearance period (from June 2021 through June 2022). During that period, the past due amounts continued to accrue on the account, which Plaintiff was obligated to repay when the forbearance expired.

However, rather than resume making payments when the forbearance expired, Plaintiff has not made any payments on his loan. The loan remains due for the February 1, 2021 payment, and Mr. Keen has not made any payments on the loan for nearly 3 years. In the meantime, as loan servicer, LoanCare has been advancing payments for property taxes and hazard insurance to protect the property for the investor. The current market interest rate

governing VA loans is 7.125%.  The amount Plaintiff owes to pay off the loan is now about $900,000 and the amount to reinstate the mortgage current is about $160,000.

The issues for trial include: (1) that Plaintiff has not complied and cannot afford to comply with his mortgage obligations; (2) that LoanCare serviced the loan in accordance with VA guidelines and applicable law; (3) that LoanCare worked diligently with Plaintiff for loss mitigation options to avoid foreclosure, including processing multiple Plaintiff applications and obtaining two conditionally approved loan modifications, subject to VA approval; (4) that Plaintiff cannot meet his burden of proving: (a) that LoanCare made a "knowingly false statement or omission" or that LoanCare otherwise engaged in an unfair or deceptive trade practice (*see Wesker v. Bank of Amer., N.A.*, No. SAG-21-03319, 2022 WL 4608330, at *4 (D. Md. Sept. 30, 2022) (holding that "the failure to properly and timely process [a loan modification application] is not a deceptive trade practice, but simply a complaint about timeliness . . . repeated requests for materials that had already been sent, again does not suggest deception absent some factual allegation that [servicer] had actually received the materials and intended to trick Plaintiffs into sending them again")); (b) that "Plaintiff reasonably relied on"; (c) that were the "proximate cause" of any "actual damages"; or (d) that Plaintiff has any "non-speculative" emotional distress supported by "objective criteria"; (5) that Plaintiff caused or failed to mitigate his alleged damages; (6) that any award to Plaintiff must be set off by the $160,000 (which will continue to accrue through the date of trial) owed to reinstate the mortgage; and (7) that the mortgaged property is estimated to be valued at over $1,000,000 such that there would be no deficiency if the property goes to foreclosure.

### c) *Similar statements as to any counterclaim, cross-claim or third-party claim.*

Not applicable.

### d) *Any amendments required of the pleadings*

Plaintiff

Mr. Keen's Complaint cites Md. Code, Commercial Law, §13-301(1), which defines "unfair or deceptive trade practices" as: "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers…"   See Compl. ¶¶47 and 49.  ECF No. 1-1.  Md. Code, Commercial Law, §13-301(3) is also applicable to the facts presented in Mr. Keen's claim under the MCPA.  It defines "unfair or deceptive trade practices" as "[f]ailure to state a material fact if the failure deceives or tends to deceive…."

Defendant

Defendant objects to Plaintiff's improper attempt to amend his Complaint on the eve of trial by adding a brand-new claim under a different statutory provision.  The only MCPA claim pled, prosecuted through discovery, argued on summary judgment, or at issue at any time in this lawsuit is under section 13-301(1).  That statute requires Plaintiff to prove that LoanCare knowing made a false statement or omission that Plaintiff reasonably relied on that caused him actual losses.  *See Javitt v. Cunningham Contr. Inc.*, 2016 Md. App. LEXIS 971, *10-11 (Md. Ct.

4

Spec. App. Aug. 26, 2016) (citing *Citaramanis v. Hallowell*, 328 Md. 142, 157, 613 A.2d 964 (1992)). The parties have briefed and the Court has ruled on all claims pled in the Complaint holding that only Plaintiff's claim under 13-301 may proceed to trial. Defendant objects to Plaintiff amending or prosecuting any other claim as clearly prejudicial and contrary to controlling law.

### e) *Any issue of the pleadings that is abandoned.*

Plaintiff

Mr. Keen will abandon his claim of damage to credit depending on the Court's rulings on Motions in Limine that have been filed.

Defendant

None.

### f) *Stipulations of fact or, if the parties are unable to agree, requested stipulations of fact.*

The parties propose a stipulation to the authenticity of Michelle Scarvelli's Notes – Plaintiff's Exhibit 88 - (Exhibit 10 to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, ECF No. 44-9) – without the need for a VA representative to be present. The parties further stipulate to the authenticity of the documents produced by LoanCare in discovery.

Plaintiff

Mr. Keen requests a stipulation as to the authenticity of documents produced in discovery.

Defendant

LoanCare requests stipulation to the authenticity of Michelle Scarvelli's notes, including notes from the same document that were not included in Ex. 10 to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (ECF No. 44-9) (No. 45 below). Additionally, LoanCare requests a stipulation as to the authenticity of documents Plaintiff produced in discovery.

### g) *The details of the damages claimed or any other relief sought as of the date of the pretrial conference;*

Plaintiff

-$23,014.08 in additional interest

-$2,585.62 in added fees

-additional amounts for the above-referenced anxiety, stress, mental anguish and inconvenience

-reasonable attorney's fees.

Defendant

LoanCare maintains that Plaintiff's alleged actual damages are speculative. First, to prove alleged "additional interest" and "added fees" Plaintiff has to prove that he could afford the payments and that but for the alleged delay he would not owe the funds or would have received the modification earlier as well as the applicable terms and time period. Second, Plaintiff has not demonstrated a basis for his recovery of any alleged emotional distress damages. While the MCPA does permit a plaintiff to recover for emotional distress "sustained by him as the result of a practice prohibited" by the MCPA (Md. Code Ann., Com. Law § 13-408(a)), a plaintiff claiming emotional distress damages must demonstrate a "consequential physical injury, in the sense that the injury for which recover is sought is capable of objective determination." *Wheeling v. Selene Finance LP*, 473 Md. 356, 395 (2021) (citation omitted). This standard permits recovery for such things as depression, inability to work or perform routine household chores, loss of appetite, insomnia, nightmares, loss of weight, extreme nervousness and irritability, withdrawal from socialization, fainting, chest pains, headaches, and upset stomachs. *Id* (citation omitted). However, evidence of mere sadness, anger, humiliation, embarrassment, or stress are insufficient to support a claim for emotional distress damages without evidence of an actual injury. *Hoffman v. Stamper*, 385 Md. 1, 32 (2005) (striking emotional distress damages awards where plaintiffs failed to provide proof of a physical injury).

Plaintiff has no evidence of any physical injury as a result of the alleged emotional distress damages he suffered as a result of LoanCare's alleged conduct. In response to specific discovery requests from LoanCare, Plaintiff has provided no evidence of a physical injury. *See* Pl.'s Dep. 43 (in response to LoanCare asking Plaintiff to itemize his damages, Plaintiff responded, "Wow. So like I said before, the credit – the creditworthiness, the – humiliation of this. My kids. The eight-year-old boy gets served. How do you put a price on that? How do you explain that?"); Pl.'s Resp. ot Def.'s 1st Set Interrog. No. 2 (in response to interrogatory asking Plaintiff to itemize and show his calculation of damages, Plaintiff responded, in pertinent part, "I endured stress and anxiety during the process . . . My 7-year-old son ended up being served with foreclosure papers in 2019. I had to explain to my older kids what was going it [sic]. It was embarrassing. I had fear of being forced to move my family.").

Plaintiff has, therefore, only offered evidence of "mere sadness, anger, humiliation, embarrassment, or stress," which are insufficient to support a claim for emotion distress damages under the MCPA. *Hoffman*, 385 Md. at 32. Moreover, where Plaintiff has not provided such evidence in response to LoanCare's direct discovery requests, he should not – to the extent he intends to do so – be allowed to attempt and remedy this lack of evidence by making adjustments to his testimony on the stand at trial.

Without having set forth evidence of a physical injury, Plaintiff's claim for emotional distress damages is too speculative under Maryland law to allow for him to recover such damages. *See Kleban v. Eghari-Sabet*, 920 A.2d 606, 627 (Md. Ct. Spec. App. 2007) ("It is well established in Maryland that damages based on speculation or conjecture are not recoverable as compensatory damages." (citing *Wlodarek v. Thrift*, 178 Md. 453, 461 (1940))); *Wheeling*, 473 Md. at 395 (2021), *aff'd in part and rev'd in part*, 473 Md. 356 (2021) (claims for emotional

6

distress "exclude[] recovery based on the plaintiff simply saying, 'This made me feel bad; this upset me.'") (citation and quotations omitted).

Additionally, LoanCare has alleged a failure to mitigate and setoff as affirmative defenses. *See* Ans. (ECF#12), "Affirmative Defenses" ¶¶ 10-11.  The amount required for Plaintiff to pay off the subject debt entirely and release the lien on his property is approximately $900,000.  The amount necessary for Plaintiff to clear the default and reinstate the loan is approximately $160,000 (which will continue to accrue through the date of trial).  Accordingly, LoanCare maintains that any award Plaintiff could receive as compensation for his MCPA claim should be reduced or set off by the amount of Plaintiff's unpaid contractual obligation under the terms of the subject mortgage.

- h) **A listing of each document or other exhibit, including summaries of other evidence, other than those expected to be used solely for impeachment, separately identifying those which each party intends to offer if the need arises.  The listing shall include which exhibits the parties agree may be offered in evidence without authentication.  This requirement may be met by attaching an exhibit list to the pretrial order.**

Plaintiff

Mr. Keen may offer in evidence the following documents:

1) Purchase Money Deed of Trust PL7-22

2) Assignment of Deed of Trust PL28-29

3) Notice of servicing transfer to LoanCare dated 5-9-17, LoanCare 3599-3601

4) 2018 Loan Modification Agreement PL 30-36

5) Fax Cover Sheet dated 10-28-18 PL 39, LoanCare 2656-2675

6) Correspondence from VA dated 11-05-2018, PL 40-41

7) Loss Mitigation Packet / Borrower Assistance packet dated 12-6-18, PL 42-51, PL 974-986, LoanCare 2975-2989

8) Letter from LoanCare to Mr. Keen dated 12/7/18, receipt of application – PL 887-891, LoanCare 163-170

9) Letter from LoanCare to Mr. Keen dated 12/12/18, incomplete application – PL 892-897, LoanCare 211-218

10) Note dated 1/3/19, PL 52

11) Letter from LoanCare dated 1-3-19, complete application, PL 53-58, LoanCare 123-130

12) Non-approval letter from LoanCare dated 1-24-19, PL 59, LoanCare 3207-3214

13) Letter from LoanCare dated 2-8-19, PL 60-61

7

14) Mr. Keen's appeal letter dated 2-14-19 or 3-1-19, LoanCare 2886-2887

15) Letter from LoanCare to Mr. Keen dated 3/28/19, denial of appeal, PL 910-915, LoanCare 2955-2964

16) Letter from LoanCare to Mr. Keen re foreclosure 4-4-19, LoanCare, 77-81

17) Appeal Denial of Loss Mitigation Letter dated 4-8-19, PL 62-65

18) Letter from McCabe, Weisberg, & Conway to Mr. Keen dated 4-19-19, PL 70

19) Loss mitigation packet 5/10/19 w/ lease & hardship explanation, PL 987-1013, LoanCare 2990-3016

20) Letter from LoanCare to Mr. Keen dated 5/13/19, receipt of application, PL 916-920, LoanCare 171-178

21) E-mail exchange dated May 15, 2019, PL 75

22) Letter from LoanCare, incomplete application, dated 5-16-19, PL 76-77, LoanCare 219-226

23) Fax correspondence dated 5/20/19, PL 79-80, LoanCare 2652-2655

24) Documents submitted, May 2019, PL 83-111

25) E-mail correspondence date 6-20-19, PL 112

26) Order to Docket – foreclosure, dated 6/28/19, PL 1178-1237, Exhibit 14 to Opposition to MSJ

27) Letter from LoanCare dated 7-2-19 re incomplete application, PL 114

28) E-mail exchange 7-3-19 – 7-4-19, PL 115-117

29) Mortgage assistance application dated 7/4/19, PL 118-152, PL 1025-1058, LoanCare 3028-3063

30) Letter from LoanCare re receipt of application 7-5-19, LoanCare 179-186

31) Letter from LoanCare to Mr. Keen dated 7/10/19, complete application, PL 921-925, LoanCare 131-138

32) LoanCare Loss Mitigation Underwriting Package 7-26-19, LoanCare 12-40

33) E-mail from Michelle Scarvelli to Anne Evasco dated 8-5-19, LoanCare 2-4

34) Non-approval letter from LoanCare dated 8-6-19, PL 266-267, 926-932, LoanCare 3215-3224, 3340-3346

35) E-mail exchange with Tony Lattimore dated 8-7-19, PL 158-159

36) Letter from Mr. Keen dated 8-15-19, PL 160-161

37) Letter from Mr. Keen's wife dated 8-20-19, PL 162-163

38) Copy of residential lease for the Keens' other home, PL164- 178

39) Mortgage assistance application, 8-15-19, submitted 9-10-19, PL 180-265, PL 1068-1168, LoanCare 2724-2835, LoanCare 3064-3173

40) E-mails from Mr. Keen to loss mitigation dated 9-10-19, PL 268-269

41) Letter from LoanCare, receipt of application 9-10-19, LoanCare 187-194

42) Letter from LoanCare to Mr. Keen dated 9/16/19, incomplete application, PL 933-938, LoanCare 227-234

43) E-mails from LoanCare dated 9-16-19 and 9-17-19, PL 270-272

44) 60 day bank statements sent by Mr. Keen 9-25-19, LoanCare 2699-2723

45) E-mails dated 10-15-19 – 10-23-19, PL 274- 278

46) Lease Agreement submitted 10-22-19, LoanCare 2836-2850

47) E-mail dated 10-23-19 to Tony Lattimore, PL 280

48) E-mail from Mr. Keen's wife to Tony Lattimore dated 10-25-19, PL 286

49) E-mail dated 10-28-19 from Keen to LoanCare, PL 285

50) Notes from calls dated 10-28-19 & 11-1-19, PL 287

51) Excelon pay stubs submitted on 10-28-19, LoanCare 2851-2855

52) E-mail from LoanCare dated 10-30-19 re rental deposits, PL 290

53) Letter from LoanCare dated 10-31-19 re incomplete application, PL 291-297

54) Letter from LoanCare to Mr. Keen dated 10/31/19, failure to supply documentation, PL 939-942, LoanCare 3353-3356

55) E-mail from Keen's wife to LoanCare dated 11-1-19 re rental income, PL 306-307

56) E-mail from Mr. Keen to Jennifer Hood about LoanCare not reading packets, PL 308

57) E-mail exchange between Keens and Jennifer Hood dated 11-1-19, PL 326-329

58) TD bank statements submitted 11-3-19, LoanCare 2856-2881

59) Letter from LoanCare re complete application dated 11-4-19, PL 70-72, LoanCare 139-146, LoanCare 195-202

60) E-mails with Jennifer Hood dated 11-4-19, PL 343

61) Letter re incomplete borrower application dated 11-5-19, PL 91-92, LoanCare 235-242

62) Request for tax transcript and Excelon pay stubs submitted 11-5-19, LoanCare 2882-2885

9

63) Letter from Loancare, completed borrower application dated 11-21-19, PL 360-364, 949-954 LoanCare 147-154

64) LoanCare Loss Mitigation Underwriting Package 11-27-19, LoanCare 41-70

65) E-mail from Michelle Scarvelli to Anne Evasco dated 12-3-19, LoanCare 7-8

66) Letter from LoanCare to Mr. Keen dated 12/5/19, non-approval, PL 943-948, LoanCare 3225-3232

67) E-mail from Keen's wife to Tony Lattimore dated 12-23-19, PL 365

68) E-mail from Keen's wife to Tony Lattimore dated 1-2-20, PL 366

69) E-mail from Keen's wife to Scarvelli dated 1-3-20, PL 375

70) Final loss mitigation affidavit filed in foreclosure case, dated 12-29-19, PL 377

71) Line to file foreclosure documents – final loss mitigation application dated 1-9-20, PL 379-380

72) E-mail from LoanCare to Keen re not qualifying, dated 1-9-20, PL 381-382

73) E-mail exchange between Keens and Jeff Caicco with apps attached, dated 1-10-20, PL 383-482

74) E-mail exchange between Keens and Jeff Caicco, 1-10-20 to 1-24-20, PL 486-495

75) Letter from Keen to LoanCare dated 1-14-20, PL 497

76) Pre-Approval Information – dated 1/15/20, LoanCare 1

77) Underwriting package January 2020, LoanCare 743-751

78) Underwriting Review 1-24-19, LoanCare 3699-3723

79) E-mail from Keen's wife to Whitni-Fae Woods re 27,600 reduction, PL 546

80) Standard trial period plan letter dated 1-22-20, PL 499-507, LoanCare 3370-3378

81) E-mail between Keens and Jeff Caicco dated 5-8-20 re loan amount – 5-13-20, PL 616-617

82) Loss Mitigation Final Audit Package 6-4-20, LoanCare 3666-3696

83) Loan Mod Agreement dated 6-9-20, PL 559-566, LoanCare 710-722

84) E-mail between Keen's wife and Whitni-Fae Woods dated 7-29-20

85) Md judiciary case search on foreclosure case PL 679-683

86) VA Servicer Handbook, Exhibit 7 to Opposition to MSJ, Exhibit 4 to Scott's depo, PL 712-728.

87) Notice of Intent to Foreclose, PL 1014-1024

88) Michelle Scarvelli Notes with affidavit attached, Ex 10 to Opposition to MSJ

89) LoanCare Servicing notes, LoanCare 844-879

90) Plaintiff's Notes, PL 656-666

91) LoanCare contract with Lakeview, 1194-1319 (1194, 1198, 1199, 1204, 1214, 1221)

92) LoanCare Loss Mitigation Procedure, 3607-3661 (3607, 3608, 3618, 3619, 3620)

93) LoanCare Loss Mitigation Servicing Notes, LoanCare 3725-3734

94) Underwriting review checklists for 12/4/19, 8/5/19, and 1/22/20, LoanCare 3766-3768

95) Call recordings – 6/4/19, 9/27/19, 10/2, 10/9/19, 11/6/19, 11/13/19, 11/19/19, 12/9/19 (CDZ), 12/9/19 (B), 12/10/19, 12/18/19, 1/2/20, 1/15/20.

Plaintiff may also offer additional documents depending on the outcome of the Motions in Limine

96) FRED data on VA mortgages – PL 676-678*

97) Experian dispute results, PL 684-696*

98) Any other documents produced by the parties in discovery.

Defendant

1) Loss Mitigation Servicing Notes, LoanCare 3724-3735
2) January 24, 2019 Denial of December 18, 2018 Application, LoanCare 3699-3723
3) June 4, 2020 Final Audit Package, LoanCare 3666-3696
4) LoanCare Loss Mitigation Procedure, LoanCare 3607-3661
5) Keen's March 1, 2019 Appeal (dated February 14, 2019, LoanCare 2886-2887
6) Residential Lease Agreement submitted 10/22/19, LoanCare 2834-2850
7) 60-day Bank Statements sent 9/25/19, LoanCare 2699-2723
8) Servicing notes, LoanCare 844-879
9) Servicing notes, LoanCare 825-843
10) January 2020 Loss Mit Underwriting package, LoanCare 743-751
11) November 27, 2019 Loss Mit Underwriting Package, LoanCare 41-70
12) July 26, 2019 Loss Mit Underwriting Package, LoanCare 12-40
13) December 3, 2019 Email from Michelle Scarvelli, LoanCare 7-8
14) August 5, 2019 Email from Michell Scarvelli, LoanCare 2-4
15) Pre-approval information dated January 15, 2020, LoanCare 1
16) Chapter 5 and Chapter 6 of the VA Servicer Handbook, PL 712-728
17) June 9, 2020 Loan Modification Agreement, LoanCare 710-722
18) Email from Whitni-Fae Woods from LoanCare to Kelli Keen, PL 546
19) Standard Modification Trial Period Plan, LoanCare 3370-3378
20) Email Exchange between Jeff Caicco and Keens, PL 486-485
21) Email from Kelli Keen to Tony Lattimore dated 12/23/19, PL 365

22) Email from Keens to Jennifer Hood dated 11/1/19, PL 326-329; PL 306-307
23) Keen's loss mit application sent 9/10/19, LoanCare 2724-2835
24) August 20, 2019 hardship letter from Kelli Keen, PL 162-163, LoanCare 2831-2832
25) August 15, 2019 hardship letter from Stephen Keen, PL 160-161, LoanCare 2829-2830
26) Keen's Loan mod application dated 7-5-2019, PL 118-152
27) LoanCare's March 28, 2019 denial of Keen's March 1, 2019 appeal, PL 62-69
28) February 8, 2019 Notice of Default ($37k to cure), PL 60-61
29) Keen's Loss mitigation package dated 12/6/18, PL 42-51
30) May 17, 2018 Loan Modification Agreement, PL 30-36
31) Assignment of Deed of Trust, PL 28-29
32) Original Purchase Money Deed of Trust, PL 7-22, LoanCare 2598-2609
33) Note with Allonges, LoanCare 2580-2584
34) March 24, 2021 Default Letter to Keen, LoanCare 1994-1996
35) Keen's COVID Forbearance Request, LoanCare 2965-2966
36) June 8, 2021 Letter Granting Keen COVID Forbearance Request, LoanCare 1946-1950
37) August 27, 2021 Letter Updating COVID Forbearance Termination Date, LoanCare 2572-2575
38) January 5, 2022 Letter Granting COVID Forbearance Request, LoanCare 1958-1962
39) November 16, 2023 Monthly Statement, LoanCare 3799-3806
40) Updated account history (as of 12/5/2023), LoanCare 3794-3798
41) July 5, 2019 Hardship Letter, LoanCare 3059-3060
42) Keen's December 6, 2018 Hardship Letter, LoanCare 2985
43) Keen's May 8, 2019 Hardship Letter, LoanCare 2999-3000
44) Additional pages of Michelle Scarvelli's note not included in Pl.'s Opp. to Mot. Summ. J., Ex 10 (Scarvelli's note pages 49-52; 59-64)
45) LoanCare Servicing Notes, LoanCare 825-909
46) Call recordings: 10/9/19; 12/10/19; and any other call recordings produced in discovery
47) Plaintiff's responses to LoanCare's First Interrogatory Requests
48) Any documents or other exhibits identified by Plaintiff.
49) Any documents and pleadings filed with this court by Plaintiff or LoanCare.
50) Any other documents exchanged between the parties in discovery.

**i) A list for each party of the name, address, and telephone number of each witness, other than those expected to be called solely for impeachment, separately identifying those whom the party expects to present and those whom the party may call if the need arises.**

Plaintiff

1) Stephen Keen
3427 Pocahantas Drive
Edgewater, MD 21037
(443) 975-6917

12

   2) Kelli Keen
      3427 Pocahantas Drive
      Edgewater, MD 21037
      (240) 532-0762

   3) Steven Scott
      LoanCare, LLC Corporate Designee
      c/o Troutman Pepper Hamilton Sanders LLP
      401 Ninth Street, NW, Suite 1000
      Washington, D.C. 20004
      (202) 274-6218

   4) Michelle Scarvelli
      1240 East 9th Street
      Cleveland, OH 44199
      877-827-3702 extension 221159

<u>Defendant</u>

   1) Stephen Keen
      3427 Pocahontas Drive
      Edgewater, MD 21037
      (240) 975-6917

   2) Kelli Keen
      3427 Pocahontas Drive
      Edgewater, MD 21037
      (240) 532-0762

   3) Steven Scott
      c/o Troutman Pepper Hamilton Sanders LLP
      Thailer A. Buari
      401 Ninth Street, NW, Suite 1000
      Washington, D.C. 20004
      Phone: (202) 274-6218
      Email: thailer.buari@troutman.com

   4) Lou Zielinski
      c/o Troutman Pepper Hamilton Sanders LLP
      Thailer A. Buari
      401 Ninth Street, NW, Suite 1000
      Washington, D.C. 20004
      Phone: (202) 274-6218
      Email: thailer.buari@troutman.com

> j) *A list for each party of the name and specialties of experts the party proposes to call as witnesses including hybrid fact/expert witnesses such as treating physicians*

<u>Plaintiff</u>

Plaintiff does not intend to call any expert witnesses.

<u>Defendant</u>

LoanCare does not intend to call any expert witnesses.

> k) *A list of the pages of and/or lines of any portion of a deposition to be offered in a party's case in chief or any counter-designations under Fed R. Civ. P. 32(a)(4).*

<u>Plaintiff</u>

Mr. Keen may offer any of the following portions of Steven Scott's deposition transcript:

- page 13, lines 8-18

-page 14, lines 7-13

- page 34, lines 6-17

- page 70, lines 15-21

<u>Defendant</u>

LoanCare may offer any of the following portions of Plaintiff's deposition transcript:

- 34: 9-13
- 34: 19-20
- 35: 3-22
- 36: 1-22
- 37: 1-22
- 43: 4-12
- 44: 9-15
- 45: 1-22
- 46: 1-22
- 47: 1-4
- 50: 8-12
- 67: 1-22
- 90: 15-22
- 91: 1-9

> l) *Any other pretrial relief, including a reference to pending motions, which is requested.*

The parties agree that there are two (2) motions in limine pending with the Court.

m) **Any other** *matters added by the Court.*

Dated:  January 8, 2024               Respectfully submitted,

**EDWARD F. SIMON, LLC**

/s/ Edward F. Simon

Edward F. Simon, Esq. (D. Md. # 12211)
P.O. Box 4284
Annapolis, MD 21403
Telephone: (410) 562-0669
Fax: (410) 571-3997
edsimon.law@gmail.com

*Counsel for Mr. Keen*


**TROUTMAN PEPPER HAMILTON SANDERS LLP**
 By: /s/ Thailer A. Buari
Thailer A. Buari, Esq. (D. Md. # 30287)
401 9th Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 274 -2812
Fax: (202) 274-2994
Email:  thailer.buari@troutman.com

Jason E. Manning, Esq. (*admitted pro hac vice*)
222 Central Park Ave, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687 -7564
Fax: (757) 687-1524
Email:  jason.manning@troutman.com

Michael E. Lacy, Esq. (*admitted pro hac vice*)
222 Central Park Ave, Suite 2000
Virginia Beach, VA 23462
Telephone: (804) 697-1326
Fax: (757) 698-6061
Email:  michael.lacy@troutman.com

*Counsel for LoanCare, LLC*

15

_____
Judge, United States District Court
for the District of Maryland